## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SHAUN GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Action No. 3:13-cv-1248-O** |
| | § | **(Consolidated with 3:14-cv-2124)** |
| RANDALL'S FOOD AND DRUGS, LP et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

Before the Court is Defendant's Motion for Summary Judgment, filed March 7, 2014 (ECF

No. 16).  Having considered the motion, response, reply, summary judgment record, and applicable

law, and for the reasons stated below, the motion is granted in part and denied in part.

---

[1] On May 22, 2014, the Court issued a decision denying Defendants' motion for summary judgment as to Plaintiff's negligence claim and granting the motion in all other part. *See* Mem. Op. & Order at 17, ECF No. 27. As part of its ruling, the Court dismissed Plaintiff's claims arising under the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA") without prejudice for failure to exhaust administrative remedies. *See id.* This negligence case is currently set for trial on the Court's four-week docket commencing July 7, 2014.  On June 10, 2014, Plaintiff filed a lawsuit in this district against the same Defendants alleging ADA and TCHRA violations arising out of the same facts. *See* Civil Action No. 3:14-CV-2124-N.  Following transfer of the case to this Court's docket, the undersigned consolidated Civil Action No. 3:14-CV-2124-N with the instant case. *See* Order of Consolidation, ECF No. 43.  The parties have agreed to rely on their previously submitted summary judgment briefing and evidence on the ADA and TCHRA claims. *See* Joint Report at 1, ECF No. 48.  Plaintiff, however, requests additional briefing as to Defendants' previously briefed argument that Plaintiff's TCHRA/ADA claims must be dismissed for failure to exhaust administrative remedies, as evidenced by the Charge of Discrimination which is not dated, signed, or verified.  The Court agrees with Defendants that this issue has already been fully briefed, and the Court has a copy of the Charge in the summary judgment evidence. *See* Def. Supp. App. in Support of MSJ at 4 (Charge of Discrimination), ECF No. 25.  Accordingly, no further briefing is required. In light of the recent consolidation, this Amended Memorandum Opinion and Order **supersedes** the Court's May 22, 2014 decision (*see* ECF No. 27), which is hereby **vacated**.

1

## I.      Factual and Procedural Background

This is an action by Plaintiff Shaun Garcia ("Garcia") against his employer Randall's Food and Drugs, L.P. d/b/a Tom Thumb ("Tom Thumb"), arising from a workplace accident. Specifically, Garcia alleges that in November 2011, while performing tasks for Tom Thumb, he fell on a slippery step and injured his right hand, requiring numerous surgeries and modified work duties. Garcia brings a common law negligence claim against Tom Thumb arising from the November 2011 accident. Garcia also brings claims against Tom Thumb relating to how Tom Thumb treated him following the accident until his ultimate termination in August 2012, including claims under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code § 21.001 *et seq.*, as well as a claim for defamation.

Garcia began working for Tom Thumb in August 2007. Pl. App. at 4.[2] In 2010, after promoting Garcia to the position of Grocery Director, Tom Thumb transferred Garcia to Store 1540 in Dallas, Texas. *Id.* at 7, ¶ 25; Def. App. at 30. As Grocery Director, Garcia's job duties included overseeing the grocery department, ordering, inventory, stocking, and display and sales of all grocery items in the store. Pl. App. at 4, ¶ 4. Garcia reported to Tito Velasco ("Velasco"), the Assistant Store Director, and Rock Pollard ("Pollard"), the Store Director. *Id.* at 105-06, 174. Pollard reported to Larry Luttrell ("Luttrell"), District Manager. *Id.* Velasco never received any complaints about Garcia, and stated that Garcia was a good employee and a hard worker. *Id.* at 128-29, 200, 204.

---

[2]In deciding this motion, the Court views the evidence in the light most favorable to Garcia as the summary judgment nonmovant, and draws all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986);*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

At Store 1540, the responsibility for maintaining a clean store and cleaning spills was poorly defined. *Id.* at 6, ¶ 11. Tom Thumb's position was that all employees were responsible for store cleanliness. *Id.* at 6, ¶ 15. Even when specific cleaning duties were assigned to specific groups, Tom Thumb rarely assigned them to specific individuals or job positions, so no one was responsible for making sure the tasks were accomplished. *Id.* Cleaning public areas was a priority, while cleaning areas not frequented by the public was a very low priority. *Id.* at 6, ¶¶ 17-18. Often, spills in areas accessible only to employees were not cleaned. *Id.* at 6, ¶¶ 18-19.

On the morning of November 17, 2011, Garcia was working as Grocery Director at Store 1540. *Id.* at 7, ¶ 25. That day, Luttrell and several other important visitors were scheduled for a store walk through. *Id.* at 7, ¶ 25; *id.* at 22-25. Prior to their arrival, Pollard sent Garcia to a storage room to retrieve a three-tiered display basket. *Id.* at 4-8, 29, 109. The storage room was in the back of the store and only accessible via a staircase. *Id.* at 8, ¶ 29. The staircase was littered with a clipboard at the bottom, and some trash and papers. *Id.* at 32-33. The storage room at the top of the stairs was rarely visited by most of the store's employees, and the area was not assigned to any particular department. *Id.* at 7, ¶ 22. The lighting on the stairs was sub-optimal. *Id.* at 29. The area was a "no man's land," where people could sit on the stairs and eat, fill out paperwork, or take a break. *Id.* at 7, ¶ 23. During his employment at Store 1540, Garcia only witnessed the area being cleaned once. *Id.* at 7, ¶ 24. As directed by Pollard, Garcia retrieved the three-tiered display basket and, while descending the stairs, his foot hit a slick spot causing him to fall and suffer injuries to his right hand. *Id.* at 8, ¶¶ 29-33; *id.* at 29.[3]

---

[3]In its reply brief, Tom Thumb urges the Court to disregard Garcia's affidavit testimony that the stair he slipped on was slick, arguing that this affidavit testimony conflicts with Garcia's earlier deposition testimony. *See* Def. Reply at 1-2. Having reviewed the evidence, the Court rejects Tom Thumb's argument.

Garcia and a co-worker immediately reported the accident to Pollard and showed Pollard Garcia's hand.  *Id.* at 43.  Instead of reporting Garcia's injury to Risk Management immediately, as required by Tom Thumb policy, Pollard delayed reporting the injury for several hours and Garcia continued to work.  *Id.* at 43-44, 203, 221, 226.  Garcia was ultimately treated at PrimaCare around Noon and discharged at 12:45 p.m.  *Id.* at 46. He was diagnosed with a broken hand and referred to a hand surgeon specialist.  *Id.* at 46-47.   The Primacare doctor filled out a form stating that Garcia was able to resume light duty that same day, and that he should not do any pushing, pulling, or reaching.  Def. App. at 51-52; 154.  When Garcia returned back to work that day, he completed his normal duties and did not do any work that involved pushing, pulling or reaching with his right hand.  *Id.* at 53.

Following his injury, Garcia underwent three hand surgeries over the next six months.  *Id.* at 54, 55-57, 63.  Garcia was not required to use any FMLA leave following his first two surgeries, since FMLA leave is not triggered by Tom Thumb policy unless the employee will be out more than seven days.  *Id.* at 126-27.  Each time Garcia's doctors instructed him to take time off of work following surgery, he was always given that time off.  *Id.* at 56, 64, 73, 86.  Garcia was placed on FMLA leave after his third surgery in May 15, 2012.  *Id.*  After a two-week leave of absence, Garcia returned to work.  *Id.* at 63.  In August 2012, Garcia told Pollard and Velasco he might need a fourth hand surgery.  Pl. App. at 9, 205.

Each month following his injury, Garcia provided work status reports from his doctors to

---

At his deposition, Garcia repeatedly testified that the steps were "slippery" or "slick."  *See* Def. App. at 40 (Garcia Dep. Trans. at 142:16, 142:23) (describing stairs as "slippery and greasy" and "narrow and slick"); *id.* at 42 (Garcia Dep. Trans. at 152:5-6) (describing stairs as "slick").  Further, Garcia's deposition testimony that he did not step on anything, when read in context, can be understood as meaning he did not step on any trash or debris.  *See id.* at 40-42.

Tom Thumb containing his work limitations. *Id.* at 299-310. His limitations included, at various times, "left-handed work" only, no "pushing, pulling or reaching" with his right hand, and no "unloading truck or bagging groceries." *Id.* at 232, 236; Def. App. at 154. Notwithstanding these documented work limitations, and in the face of Garcia's complaints to Pollard, Luttrell, his doctors, human resources, and his insurance adjuster, Pollard continued to assign Garcia tasks that required use of two hands, including operating the cash register, bagging groceries, carry outs, and stocking shelves. Pl. App. at 57-63, 68, 72, 79-80, 98-100, 135, 137-39, 182-83, 221-24, 234, 238-39, 314, 323, 341, 392-93. Instead of giving him light duty, Tom Thumb provided the grocery department an additional thirty hours to allow Garcia to schedule employees to help him. Def. App. at 85, 88-89. In spite of the additional hours, when sales were slower than anticipated, Garcia was instructed to cut hours in the grocery department, resulting in the department being understaffed, leaving Garcia with no help and forcing him to work beyond the limitations set by his doctors. Pl. App. at 70-71, 123, 127, 209.

On or about August 17, 2012, a customer left a cell phone at Tom Thumb, and it was turned into the cash office. Def. App. at 65, 166. When the customer came to retrieve the phone, it was missing. *Id.* at 65-66. Garcia was an employee who had access to the cash office. *Id.* at 166. Loss Prevention began an investigation. *Id.* at 65-66, 165-66. On August 20, 1012, Loss Prevention Investigator Bruce Chatman questioned Garcia with Pollard present. *Id.*; Pl. App. at 150, 153. When Chatman asked him whether he knew anything about the customer's missing cell phone, he responded that he did not. Def. App. at 14, 66. Although previously cooperative, Garcia thereafter became upset and felt he was being accused of theft, and asked whether he needed a witness or a lawyer. *Id.* at 66. Upon further questioning, Garcia began cursing at Chatman, was disrespectful,

called Chatman "Man," and refused to answer any more questions. *Id.* at 14, 66, 71, 118, 164-68. After the interview, Tom Thumb suspended Garcia for insubordination and failing to cooperate in an investigation. *Id.* at 166; Pl. App. at 156.

Several days later, Garcia was called in for a second interview regarding the missing phone. Pl. App. at 4-9, 157. He was asked if he "wanted to talk about the cell phone." *Id.* at 77. Garcia stated that he wanted a lawyer present, and otherwise would not answer questions. *Id.* at 78; Def. App. at 67, 71, 73-74, 119, 169, 176. Thereafter, Pollard sent an email to Luttrell recommending that Garcia be terminated for failing to cooperate in the investigation. Def. App. at 169. Luttrell agreed with Pollard. *Id.* In letters to the Texas Workforce Commission, Tom Thumb stated that it terminated Garcia's employment for insubordination and failure to cooperate in an investigation. Pl. App. at 285-86.

## II.    Legal Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.

6

*Celotex*, 477 U.S. at 323–24.   To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).   The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and draw all reasonable inferences in favor of the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988).   The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

## III.   Analysis

Tom Thumb moves for summary judgment on all Garcia's causes of action.[4]   The Court will address each cause of action in turn.

---

[4]Garcia states in his response brief that Tom Thumb failed to challenge or move for summary judgment on his ADA retaliation claim. *See* Pl. Resp. at 43. Tom Thumb refutes this assertion. *See* Def. Reply at 5-6 n.6.   The Court has reviewed Tom Thumb's motion and brief in support, and concludes that Tom Thumb has sufficiently addressed the facts surrounding Garcia's termination to encompass all statutory grounds relating to Garcia's wrongful termination claims. *See generally* Local Rule 56.3(a) and (b).

## A.      Negligence

Garcia brings a negligence claim asserting that his injuries and damages were proximately caused by the following acts or omissions of Tom Thumb: (1) Tom Thumb created and maintained a regime under which a safe working environment could not be maintained or assured; (2) Tom Thumb failed to identify, address or warn of the resulting hazards; (3) Tom Thumb required Plaintiff to undertake unsafe actions and failed to provide Plaintiff with the necessary training, instructions, assistance and/or equipment to perform his work duties in a reasonably safe manner; (4) Tom Thumb failed to use ordinary care in supervising an employee's activities and in providing employees with adequate help in the performance of work; and (5) Tom Thumb created an unusual hazard and subsequently failed to correct or warn of the hazard.  *See generally* First Am. Compl. ¶¶ 53-54.

Tom Thumb moves for summary judgment on Garcia's negligence claim, contending that Garcia has not provided any evidence of a duty or breach of duty by Tom Thumb.  *See* Def. SJ Brief at 17.  Further, in its reply brief, Tom Thumb argues that Garcia is limited to a premises liability claim, since he is complaining about falling on a slick substance on the stairs.  *See* Def. Reply at 2 (Garcia's "slick spot theory implicates a branch of negligence law in Texas that arises from a premises owner's duty to maintain a safe property for its business invitees.").  Specifically, Tom Thumb argues that it is entitled to judgment as a matter of law on Garcia's negligence claim, as Garcia has presented no evidence that Tom Thumb "had actual or constructive knowledge of the alleged slick spot," an element of a premises liability negligence claim.  *See id.* at 3.

In response, Garcia argues that he has gone beyond the pleadings and designated specific facts showing there is a genuine issue for trial on his negligence claim such that a reasonable jury could return a verdict in his favor.  *See* Pl. Resp. at 15-26.  For the reasons that follow, the Court

8

agrees that genuine issues of material fact preclude summary judgment.

Tom Thumb is a non-subscribing employer under the Texas Workers' Compensation Act ("TWCA"). *See* Tex. Lab. Code § 406.002 (West 2006). "[T]he TWCA vests employees of non-subscribing employers with the right to sue their employers for work-related injuries, and the TWCA deprives the non-subscribing employer of the traditional common-law defenses of contributory negligence, assumption of the risk, and the fellow-servant rule." *Odom v. Kroger Texas, L.P.*, 2014 WL 585329, at *2 (Feb. 14, 2014 N.D. Tex.) (Fitzwater, C.J.) (citing Tex. Lab. Code § 406.002). Section 406.033(d) provides that in an action against a non-subscribing employer, "the plaintiff must prove negligence of the employer or agent or servant of the employer acting within the general scope of the agent's or servant's employment. Tex. Lab. Code Ann. § 406.033(d).

It is undisputed that Garcia was injured during the course and scope of his employment. Therefore, Texas common law governs this action, subject to the parameters of the TWCA. Specifically, Garcia must prove that Tom Thumb was negligent, but Tom Thumb, as a non-subscribing employer, cannot rely on the traditional defenses of contributory negligence, assumption of the rise, or the fellow-servant rule. Tex. Lab. Code § 406.033(a)(1)-(2) and (d).

"Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002) (citation and punctuation omitted). "Under the general umbrella of negligence, there are distinct species of claims[.]" *Odom*, 2014 WL 585329, at *3. Relevant to this case where an employee was injured at work are: (1) a premises liability claim; (2) a negligent activity claim; and (3) a negligence claim "based on the set of

9

continuous, non-delegable duties that employers owe their employees." *Id.* (and cases cited therein).

While Tom Thumb argues that Garcia should be limited to a premises liability claim because he asserts he was injured based on a condition on the premises (*see* Def. Reply at 2), the pleadings shows that Garcia is alleging the third species of claim, that is, that Tom Thumb breached its non-delegable duty to provide its employees with a safe workplace. *See generally* First Am. Compl. ¶¶ 53-54  This non-delegable duty is "unique to, and specifically derived from, the employment relationship itself." *Odom*, 2014 WL 585329, at *4 (citing *Leitch v. Hornsby*, 933 S.W.2d 114, 117 (Tex. 1996) ("For decades, this Court has recognized that this duty is an implied part of the employer-employee relationship.")). While "[a]n employer is not an insurer of its employees' safety at work[. . . ,] an employer does have a duty to use ordinary care in providing a safe workplace." *Leitch*, 933 S.W.2d at 117 (citing *I.M. Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995)); *Odom*, 2014 WL 585329, at *5 (injured employee "can pursue an ordinary negligence claim on the basis of his employer's continuous, non-delegable duties [including] to provide necessary instrumentalities, to hire competent co-employees, to train and supervise, or to provide safety regulations[.]") (internal punctuation omitted); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975) ("Among these [duties] are the duty to warn employees as to the hazards of their employment and to supervise their activities, the duty to furnish a reasonably safe place in which to labor and the duty to furnish reasonably safe instrumentalities with which employees are to work[]"), *overruled on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 516-17 (Tex. 1978).

Having reviewed the summary judgment record, the Court concludes that Garcia has submitted evidence of acts and omissions by Tom Thumb or its agents or servants sufficient to raise a genuine issue of material fact as to whether Tom Thumb failed to use ordinary care in providing

a safe workplace, and breached other non-delegable duties, and that such negligence caused Garcia's injuries. *See* Pl. App at 6, ¶¶ 11, 15, 17-19; *id.* at 7, ¶¶ 22-24; *id.* at 15-16; *id.* at 18-19; *id.* at 26-27; *id.* at 35, 37.[5]   Accordingly, the Court denies Tom Thumb's motion for summary judgment on Garcia's negligence claim.

### B.      FMLA - Discrimination and Retaliation

Garcia asserts he was terminated because he exercised his rights under the FMLA. *See* First Am. Comp. ¶ 61.[6]  The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave.   29 U.S.C. § 2615(a)(1).  The statute also makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.   29 U.S.C. §

---

[5] Cases cited by Tom Thumb are distinguishable.  Unlike this case, they involve injuries where employees made voluntary decisions to engage in risky behavior which was not required of them to fulfill their job duties. *See* Def. SJ Brief at 12-15 (and cases cited therein).  Further, Garcia's subjective knowledge of the dangers on the steps, or his failure to hold onto the railing (raised by Tom Thumb in support of its summary judgment motion) are relevant to comparative negligence or assumption of the risk, which are affirmative defenses unavailable to non-subscribers such as Tom Thumb. *See* Tex. Lab. Code § 406.033(a).

[6] Garcia broadly alleges in his complaint that Tom Thumb violated the FMLA by interfering with, restraining or denying him the right to take FMLA leave and terminating him because he would have to continue to avail himself of FMLA leave in the future. *See* First Am. Comp. ¶ 61.  In his Response to Tom Thumb's motion, however, Garcia only argues that Tom Thumb violated the proscriptive protections provided by the FMLA, that is, that his termination was in retaliation for exercising FMLA rights. *See generally Mauder v. Metropolitan Transit Authority*, 446 F.3d 574, 580 (5th Cir. 2006) (distinguishing the prescriptive and proscriptive aspects of the FMLA).  Further, Garcia only sets forth the standard for bringing a claim for violating the proscriptive protections of the FLSA, and not the prescriptive protections. *See* Pl. Resp. at 26.  Therefore, the Court only addresses the proscriptive provisions of the FLSA.  To the extent Garcia may have sought to bring a claim for a violation of the prescriptive provisions of the FMLA, he fails to cite any evidence to dispute that his prior FLSA requests were honored in full and that he received any requested FMLA entitlements.  Accordingly, Tom Thumb is entitled to judgment as a matter of law on any claim under the FMLA's prescriptive provisions. *See, e.g., Esparza v. Bank of America, N.A.*, 2013 WL 5208024, at *7 (N.D. Tex. Sept. 17, 2013) (Fitzwater, C.J.) (employer entitled to summary judgment on employee's interference claim where employee failed to produce evidence to dispute that his FMLA requests were granted and that he received all FMLA requested entitlements); *Smith v. CVS Caremark Corp.*, 2013 WL 2291886, at *4 (N.D.Tex. May 23, 2013) (Boyle, J.) (same).

2615(a)(2).

To establish a *prima facie* case of FMLA discrimination and retaliation, Garcia must prove that: (1) he engaged in activity protected under the FMLA; (2) he was subjected to a materially adverse employment action; and (3) a "causal connection" existed between the protected activity and the adverse employment action. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F. 3d 757, 768 (5th Cir. 2001) (*citing Chaffin v. John H. Carter Co., Inc.,* 179 F.3d 319-20 (5th Cir. 1999)). If Garcia is able to make this showing, the burden shifts to Defendant to proffer a legitimate reason for its action. *Id.* If Defendant proffers a legitimate reason, Garcia is obligated to show Defendant retaliated against him because he exercised his FMLA rights. *Id.* As with Title VII claims, the *McDonnell Douglas* framework applies to discrimination and retaliation claims under the FLSA. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

Tom Thumb seeks summary judgment on Garcia's FMLA discrimination and retaliation claims, arguing that Garcia cannot establish a fact issue that Tom Thumb discriminated against him or terminated him because he would have to continue to avail himself of FMLA leave. *See* Def. SJ Brief at 17-20. Tom Thumb also contends that Garcia cannot make out a prima facie case of discrimination or retaliation under the FMLA because Garcia did not request or apply for leave at any time after he returned from his May 2012 surgery. *Id.* at 19-20. Tom Thumb further argues that, even assuming Garcia provided notice, Tom Thumb terminated him for a legitimate, nondiscriminatory reason, and Garcia has failed to point to evidence to show that the reasons advanced by Tom Thumb were a pretext for discrimination or retaliation. *Id.* at 20; *see also* Def. Reply at 5. In response, Garcia contends he has made out a prima facie case because in August 2012 he "put Tom Thumb on notice he would avail himself of FMLA leave. Garcia as well as his doctor

informed Tom Thumb, including Pollard, of the need for a fourth surgery and the permanent damage to his wrist. This put Tom Thumb on notice that Garcia needed to avail himself of FMLA leave yet again. Garcia was terminated just days later." Pl. Resp. at 27. Garcia further argues that he has submitted sufficient evidence to establish pretext. *Id.* at 28-29, 36-43.

Having considered the evidence, the Court agrees with Tom Thumb that Garcia has failed to establish the first prong of his prima facie case, namely, that he was a protected employee under the FMLA. Specifically, he has not brought forth evidence that he gave Tom Thumb notice sufficient to reasonably apprise Tom Thumb that he needed to take FMLA leave after he returned from his third hand surgery. While Garcia is correct that the employee need not use the phrase "FMLA leave," "the employer is not required to be clairvoyant." *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) (internal punctuation omitted). In this case, Garcia's only evidence is his affidavit testimony that he told Pollard and Velasco he would need a fourth hand surgery. *See* Pl. App. at 9, ¶ 36. Although he states that his doctors also informed Tom Thumb of the need for a fourth surgery, he provides no evidence in support of this assertion. Even assuming Garcia informed Tom Thumb he might need a fourth surgery, the Court concludes it is insufficient to state a prima facie case. It would be unreasonable to expect Tom Thumb to know that Garcia meant to request FMLA leave based on this record. Garcia had taken FMLA leave in the past, and knew how to request it. No reasonable juror could conclude that a statement by Garcia that he might need another hand surgery at some unspecified future time was sufficient, absent more, to apprise Tom Thumb of Garcia's intent to request FMLA leave. *See generally Lanier v. Univ. of Texas Southwestern Med. Ctr.*, 527 Fed. Appx. 312, 316 (5th Cir. June 12, 2013) ("Although an employee need not use the phrase 'FMLA leave,' she must give notice that is sufficient to reasonably apprise

13

her employer that her request to take time off could fall under the FMLA.  This court does not apply categorical rules for the content of the notice; instead we focus on what is 'practicable' based on the facts and circumstances of each individual.").  In short, the Court concludes that Garcia's statement that he might require a fourth surgery is insufficient to invoke the protections of the FMLA. Accordingly, the Court grants Tom Thumb's motion for summary judgment on Garcia's FMLA claims.

### C.      ADA and TCHRA

Garcia alleges Tom Thumb discriminated against him and subsequently discharged him as a result of his disability, record of said disability, or because it regarded him as disabled.  He further alleges that he asked for accommodations as a result of his disability, but instead of accommodating Garcia, Tom Thumb made Garcia work harder, harassed him, and terminated him. *See* Consolidated Civil Action No.  3-14-cv-2124-O, Complaint ¶ 33, ECF No. 1.  Tom Thumb argues it is entitled to summary judgment on Garcia's ADA and TCHRA claim since Garcia failed to exhaust administrative remedies, cannot establish a prima facie case of disability discrimination or, even if he could, he has failed to establish that Tom Thumb's legitimate nondiscriminatory reasons for discharging him was a pretext for disability discrimination, and Garcia cannot establish a claim for failure to accommodate.  Def. Mot. for SJ at 20-29.  Because the Court agrees that Garcia has failed to exhaust administrative remedies, the Court need not consider Tom Thumb's alternative arguments.

A plaintiff bringing an action under the ADA and TCHRA must exhaust administrative remedies with the Equal Employment Opportunity Commission ("EEOC") before filing suit. *Dao v. Auchan Hypermarket*, 96 F. 3d 787, 789 (5th Cir. 1996) (per curiam) ("[A]n employee must

14

comply with the ADA's administrative prerequisites prior to commencing an action in federal court . . . [T]he ADA incorporates by reference the procedures applicable to actions under Title VII."). This requires the plaintiff to timely file a charge with the EEOC and receive notice of right to sue before filing suit. *Subbiah v. Kiel*, 850 F. Supp. 2d 653, 658 (N.D. Tex. 2011) (Boyle, J.) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002)).[7] The EEOC's regulations defining the form of a charge require at a minimum that: "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. §1601.9.

The Charge in this case is unverified, undated and unsigned. S*ee* Def. Supp. App. at 4 (Charge of Discrimination). Accordingly, the Charge fails to satisfy the requirements of 29 C.F.R. §1601.9. Further, without a date, the Court cannot determine if the Charge was timely filed. The Court recognizes that, nevertheless, the document may still constitute a charge provided it complies with 29 CFR § 1601.12(b). *See* 29 CFR § 1601.12(b) ("[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein."). In this case, however, Garcia has failed to provide any evidence of an amended charge which cures the defects. The Court further notes that Garcia could have, but did not, include a copy of an amended Charge with his June 10, 2014 Complaint in Civil

---

[7]With regard to Garcia's TCHRA claim, *see* Tex. Labor Code § 21.001 *et seq.*, the EEOC and Texas Workforce Commission ("TWC") have a worksharing agreement such that any complaint filed with the EEOC also initiates proceedings with the TWC. *See Marquis v. Omniguide, Inc.*, 714 F. Supp. 2d 640, 644 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Price v. Phila. Am. Life Ins. Co.*, 934 S.W.2d 771, 773-74 (Tex. App.—Houston [14th Dist.] 1996, no writ)).

Action No. 3:14-CV-2124-N, since consolidated with this case.[8]  In short, Garcia has failed to raise a genuine issue of material fact that he filed a Charge sufficient under either  29 C.F.R. § 1601.9 or 29 CFR § 1601.12(b).  Accordingly, the Court grants Tom Thumb's motion for summary judgment on Garcia's ADA and TCHRA claims.

### D.    Defamation

To maintain a cause of action for defamation, a private citizen plaintiff must show that (1) defendant published a false statement; (2) the false statement was defamatory (that is, it damaged the plaintiff's reputation, exposing him to public hatred, contempt, ridicule or financial injury; and (3) the defendant made the statement with negligence as to its truth.  *Green v. CBS, Inc.*, 286 F.3d 281, 283 (5th Cir. 2002).  "Defamation claims must specifically state the time and place of the publication."  *Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158 at *5 (N.D. Tex.), *aff'd*, 232 F.3d 210 (5th Cir. 2000).  In suits brought by private individuals, truth is an affirmative defense to a defamation claim.  *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) In addition, "an employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing."  *Id.*

Garcia alleges in his amended complaint that "Defendant's grounds for termination of Garcia are untrue defamatory statements that caused harm to Garcia."  First Am. Compl. at 15.  Tom Thumb moves for summary judgment on Garcia's defamation claim, arguing there is no evidence to support

---

[8]While Garcia included a copy of his Notice of Right to Sue letter as an exhibit to his June 10, 2014 Complaint in Civil Action No. 3:14-CV-2124-N (since consolidated), he did not include a copy of an amended Charge.  In its prior summary judgment decision, where the Court dismissed Garcia's ADA and TCHRA claims for failure to exhaust administrative remedies, in addition to noting that Garcia had filed suit prior to receiving his Notice of Right to Sue letter and did not subsequently amend his complaint, the Court specifically noted that the Charge was insufficient under 29 C.F.R. § 1601.9.  *See* May 22, 2014 Mem. Op. & Order at 14-15 n.7.

his claim.  In response, Garcia introduces as evidence statements made by Tom Thumb to the Texas

Workforce Commission ("TWC") that Garcia was terminated because he was insubordinate and

refused to answer questions during an investigation related to the theft of a customer's cell phone.

*See* Pl. Resp. at 46-47; Pl. App. at 285 (October 2, 2012 letter from Tom Thumb to TWC that Garcia

terminated for insubordination); *id.* at 284 (September 14, 2012 letter from Tom Thumb to TWC that

Garcia terminated for insubordination).

As Tom Thumb correctly argues, evidence of statements made by Tom Thumb to the TWC

regarding Garcia's termination fails to establish defamation as a matter of law.  *See* Def. Reply at

13.  Specifically, written or oral statements made to the TWC are absolutely privileged and cannot

serve as a basis for a defamation claim.  *See* Tex. Lab. Code § 301.074 ("An oral or written

statement made to the commission or to an employee of the commission in connection with the

discharge of the commission's or the employee's duties under Subtitle A may not be the basis for

an action for defamation of character.")[9]; *see also Hardwick v. Houston Lighting and Power Co.*, 881

S.W.2d 195, 198 (Tex. App. – Corpus Christi 1998, writ dismissed w.o.j.).  In short, letters from

Tom Thumb to the TWC are insufficient as a matter of law to support a defamation claim.

Garcia also argues that he had a job offer with a prospective employer, Cold Storage Seafood,

but the job offer was withdrawn after the prospective employer completed a reference check.  *See*

Pl. Resp. at 55.   The Court has reviewed the evidence upon which Garcia relies to support this

argument.  *See* Pl. App. at 79-81.   Other than speculation, Garcia provides no competent summary

judgment evidence to support the assertion that he did not receive the job offer because of anything

---

[9]Subtitle A refers to the administration of the Texas Unemployment Compensation Act, and the determination of whether an unemployed individual is eligible to receive unemployment benefits.  *See* Tex. Lab. Code § 207.021.

Tom Thumb may have said, or that the prospective employer even spoke to Tom Thumb.  He has not produced an affidavit from the prospective employer that would establish why it did not hire him. Further, in his deposition, Garcia admitted he did not know why he did not get hired by Cold Storage Seafood.  *See* Def. App. at 70-71.

In short, Garcia has failed to establish a genuine issue of material fact such that a reasonable juror could conclude that Tom Thumb defamed him.  Accordingly, the Court grants Tom Thumb's motion for summary judgment on Garcia's defamation claim.

## IV.    Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is **granted in part** and **denied in part**.  The Court **grants** Defendant Tom Thumb's motion as to Plaintiff Garcia's FMLA, ADA, TCHRA, and defamation claims.  The FMLA and defamation claims are **dismissed with prejudice**, and the ADA and TCHRA claims are **dismissed without prejudice** for failure to exhaust administrative remedies.  The Court **denies** Defendant Tom Thumb's motion as to Plaintiff Garcia's negligence claim, which remains set for trial the Court's four-week docket commencing July 7, 2014.

**SO ORDERED** this **16th** day of **June, 2014**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**